UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| VERNON CHARLES,<br><br>　　　　　Plaintiff<br><br>v.<br><br>TEXAS CITY TERMINAL RAILWAY COMPANY,<br><br>　　　　　Defendant. | Case No. 3:23-cv-200<br><br>(JURY DEMANDED) |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff, Vernon Charles, and files this Complaint, and would respectfully show the following:

### PARTIES

1. Vernon Charles ("Mr. Charles") is a citizen and resident of the State of Texas.

2. Defendant Texas City Terminal Railway Company ("Defendant") is a domestic company that regularly does business in a systematic and continuous manner in the Southern District of Texas. It may be served by service upon its counsel of record, **WILLIAM C PETIT, 515 POST OAK BLVD., SUITE 900 HOUSTON, TX 77027.**

### JURISDICTION AND VENUE

3. This action arises under the whistleblower protection provisions of the Federal Railroad Safety Act, 49 U.S.C. § 20109 and as implemented by 29 CFR Part 1982.

Jurisdiction is proper under 28 U.S. Code § 1331.

4. Mr. Charles sues for damages in excess of $75,000. This Court has jurisdiction over Plaintiff's claims pursuant to 49 U.S.C. § 20109 and 29 CFR Part 1982, which permit Plaintiff to remove his claim from the Department of Labor to an appropriate United States District Court if the Secretary of Labor has not issued a final decision within 210 days. Additionally, the Federal Railroad Safety Act (49 U.S.C. § 20109) states, "FRSA promotes safety in railroad operations and reduces railroad-related accidents by protecting employees from retaliation for engaging in protected activities including reporting alleged violations of federal law relating to railroad safety or security and reporting work-related injuries or hazardous safety or security conditions." Under 49 U.S.C. § 20109(d), "if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury."

5. Venue is proper pursuant to 28 U.S.C. Section 1391(c) as Defendant is organized under the laws of the State of Texas and is located in the Southern District of Texas.

6. Mr. Charles submitted his complaint with OSHA on November 28, 2022. To date, the Secretary of Labor has not issued a final decision. As a result, Plaintiff has invoked this Court's jurisdiction.

## FACTUAL BACKGROUND

7.      This proceeding arises under the whistleblower protection provisions of the Federal Railroad Safety Act, 49 U.S.C. § 20109, which was amended by The Implementing Recommendations of the 9/11 Commission Act (Public Law 110-53) to transfer authority for railroad carrier worker whistleblower protections to OSHA and to include new rights, remedies, and procedures.  The Federal Railroad Safety Act ("FRSA") FRSA promotes safety in railroad operations and reduces railroad-related accidents by protecting employees from retaliation for engaging in protected activities including reporting alleged violations of federal law relating to railroad safety or security and reporting work-related injuries or hazardous safety or security conditions. Under the FRSA, an employer may not discharge or otherwise retaliate against an employee, contractor, or subcontractor of a railroad carrier because the employee, contractor, or subcontractor engaged in any protected activity.

8.      Mr. Charles worked as a Conductor for Texas City Terminal. On September 22, 2022, Mr. Charles and David Classen were coming from Spotting DOW Chemical Plant. The yard master on duty, J.B., entered the yard truck to line up switches for is movements to track 409, 408. As they made their last moves, Mr. Charles noticed that the switch at McKinny was lined against the planned path of the locomotive. Mr. Charles then stopped the locomotive, and got off the engine to line the switch. As he walked towards the switch, J.B. questioned Mr. Charles's actions. When Charles explained that he was lining the switch, J.B. stated that Charles could have just run through the switch. He then stated that in order to throw the switch, the locomotive needed to be fifty feet away, and it was currently forty feet away. Mr.

Charles then moved the locomotive the required distance, and threw the switch. As a result, J.B. became extremely upset.

9. Following the Incident and after he got off work, Mr. Charles reported the Incident to his Union Representative, Chris Boudin, and told him what occurred. On Friday, September 23, 2022, Mr. Charles was sitting down enjoying lunch, when J.B. told Charles, "don't let David Classen get you fired." Approximately ten minutes later, J.B. came back into the break room and expressed his dismay that Charles had reported to Chris Boudin that J.B. ordered Mr. Charles to run through a switch.

10. Through sworn testimony before OSHA, Mr. Classen has additionally stated the following:

> I was present on a train on September 22, 2022, as Mr. Charles was operating it coming from Spotting DOW Chemical Plant. I saw the yard master on duty, Justin Bernard, drive up in the yard truck to near a switch being approached by the train being operated by Mr. Charles. I heard the yard master, Justin Bernard, directing Mr. Charles to run through an unmarked switch. I knew this to be a safety rule violation, and Mr. Charles refused to do so. Mr. Charles moved the train back a safe distance from the unmarked switch, and then threw the switch to make sure the train could safely transit the switch. It appeared to me at the time that the yard master, Justin Bernard, was upset at Mr. Charles for refusing to follow his directions to commit the unsafe act of running through an unmarked switch.
>
> I spoke that evening with our local SMART Union Chairperson, Chris Boudin, and told him what occurred, including the safety rule violation by the yard master, Justin Bernard, that I witnessed. Mr. Boudin advised me that he would report the incident to TCTR management. I was not asked for any information about the incident by TCTR managers afterwards anytime during the next several months.

11. Based on these reports, Mr. Charles engaged in protected activity Under 49 U.S.C. § 20109(a) and (b) – in particular, here, Mr. Charles reported to Chris Boudin, in good faith,

the dangerousness of his workplace after he was ordered to run through a switch. Additionally, Mr. Charles refused to follow orders when he was confronted with an imminent hazardous safety or security condition, instead prompting to take the safer alternative.

12. Respondent began acting increasingly hostile towards Charles after September 22nd, as J.B. made remarks towards him, hinting that his job was at risk, and scrutinizing minor issues such as which chair Mr. Charles chose to sit in. Less than a week after the incident on September 22, 2022, when Mr. Charles refused to run through a switch and reported unsafe practices to his Union representative, Texas City Terminal terminated Charles. Both of these acts/omissions are protected activity.

13. Texas City Terminal's retaliation was designed to punish Mr. Charles for speaking up and deter others from reporting safety violations. As a result, Mr. Charles has suffered and will continue to suffer financial hardship, and the permanent and irreversible damage to his professional reputation after a long and distinguished career.

### FIRST CAUSE OF ACTION—RETALIATION AND WRONGFUL TERMINATION UNDER THE FRSA

14. The FRSA protects railroad employees from retaliation for engaging in protected activities including reporting alleged violations of federal law relating to railroad safety or security and reporting work-related injuries or hazardous safety or security conditions.

15. Based on the above-described reports, Mr. Charles engaged in protected activity under the Federal Railroad Safety Act. Indeed, Defendant unlawfully retaliated against Charles for: (1) reporting the hazardous safety or security condition (*see* 20109(b)(1)(A)) and (2) refusing to work when confronted with an imminent hazardous safety or security condition (*see*

20109(b)(1)(B)).

16. Following these protected acts, Defendant terminated Mr. Charles. Put bluntly, Defendant wrongfully fired Charles for reporting a serious safety concern and refusing to perform a dangerous task.  Mr. Charles' reports and refusal to engage in dangerous work were clearly a "contributing factor" in the decision to take adverse action against him.  In sum, Defendant took adverse action against Mr. Charles shortly after he engaged in protected activity by reporting safety concerns.

## DAMAGES

17. As a result of Defendant's conduct, Mr. Charles has suffered and will continue to suffer financial hardship, and the permanent and irreversible damage to his professional reputation after a long and distinguished career.

18. Mr. Charles has suffered and continues to suffer a significant loss of earnings and wage-earning capacity.

19. Mr. Charles also seek punitive damages because Defendant knew that it was unlawful to retaliate in violation the FRSA yet chose to terminate and retaliate against Charles for the protected acts in this complaint.

20. Mr. Charles would additionally say and show that he is entitled to recovery of pre-judgment interest in accordance with law and equity as part of his damages herein, and Mr. Charles here and now specifically sues for recovery of pre-judgment interest from the date Defendant terminated Meeks until the date of the judgment herein, as provided by law and equity, under the applicable provisions of the laws of the State of Texas and the United States

of America.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Mr. Charles requests an award of all remedies available under law, including, but not limited to:

1. Payment of compensatory damages (including back pay with interest and compensation of special damages sustained as a result of the retaliation);
2. Litigation Costs;
3. Expert Witness Fees;
4. Attorney's Fees;
5. Punitive Damages;
6. Prejudgment Interest; and
7. Any other applicable remedies under the law.

Respectfully submitted,

**DOYLE DENNIS LLP**

_____
MICHAEL PATRICK DOYLE
State Bar No. 06095650
PATRICK M. DENNIS
State Bar No. 24045777
JEFFREY I. AVERY
State Bar No. 24085185
EMMA R. BROCKWAY
State Bar No. 24125156
3401 Allen Parkway, Suite 100
Houston, Texas 77019
Phone: 713.571.1146
Fax:   713.571.1148
service@doylelawfirm.com

Sara Youngdahl
State Bar No. 24010504
THE YOUNGDAHL LAW FIRM, P.C.
4203 Montrose Blvd., Suite 280

Houston, Texas 77034-4906
281-996-0750
281-996-0725/Fax
syoungdahl@youngdahl.com

**ATTORNEYS FOR PLAINTIFF
VERNON CHARLES**